IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DARKPULSE, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. No. 24-746-JLH |
| FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, and ELI FIREMAN, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM ORDER

Pending before the Court is Defendants' Motion to Dismiss the First Amended Complaint (D.I. 64). I have reviewed the briefing (D.I. 65, 67, 68) and the relevant authorities. For the reasons set forth below, the motion is GRANTED.

1.  I assume familiarity with the allegations in the First Amended Complaint. (D.I. 29 ("FAC").) Briefly, this case arises from a lending arrangement. In April 2021, Defendant FirstFire Global Opportunities Fund, LLC ("FirstFire") loaned Plaintiff DarkPulse, Inc. ("DarkPulse") $750,000 in exchange for a convertible promissory note ("Note"). The Note obligated Plaintiff to repay the amount of $825,000, plus 10% interest per annum, with a nine-month maturity date. The Note required Plaintiff to issue 60,000,000 "commitment shares" in Plaintiff's stock. The Note included a conversion right, whereby FirstFire could forego repayment in cash and instead convert amounts owed to shares of Plaintiff's stock at a fixed share conversion price of $0.015, or in the event of a default, $0.005. The Note incorporated by reference a registration rights agreement ("RRA"). On November 15, 2021, Defendant FirstFire submitted a notice to convert its debt to stock, and it received 177,375,000 shares.

2.      The FAC seeks recission of the Note pursuant to § 29(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78cc(b) (Counts I and II); alleges control person liability under § 20(a), 15 U.S.C. § 78t, against Defendant Eli Fireman (Count III); alleges violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) (Count IV); and alleges state law claims (Counts V and VI).

3.      This case did not originate in this Court. Plaintiff originally filed suit in the U.S. District Court for the Southern District of New York, which dismissed the entire action. On appeal, the Second Circuit concluded that Plaintiff's § 29(b) and RICO claims involving the Note were subject to a Delaware forum selection clause. It vacated the dismissal of those claims and remanded with instructions to transfer the case to this Court. The case was then assigned to me. Defendants again move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

4.      A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A possibility of relief is not enough. *Id.* In determining the sufficiency of the complaint under the plausibility standard, the court must "disregard[] a pleading's legal conclusions," then "assume all remaining factual allegations to be true, construe those truths in the light most favorable to the Plaintiff, and then draw all reasonable inferences from them." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)). The inquiry is not "whether a plaintiff will ultimately

prevail" but instead only "whether the plaintiff is entitled to offer evidence to support his or her claims." *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010).

5. Counts I and II seek recission of the Note under § 29(b) of the Exchange Act. Section 29(b) provides that "every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, . . . [or] the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void." 15 U.S.C. § 78cc(b). "Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006). Plaintiff alleges that the Note violates § 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), because it requires Defendant FirstFire to act as an unregistered securities dealer.[1] A securities dealer is "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A). Plaintiff argues that "FirstFire effected transactions in securities when it executed the DarkPulse Transactions [including the Note] and

---

[1] Section 15(a)(1) states:
> It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78o(a)(1).

when it converted and sold or caused to be sold the Darkpulse stock obtained thereby." (D.I. 29 at ¶ 95.)

6. To void the Note under § 29(b), Plaintiff must establish that "(1) the contract involved a prohibited transaction; (2) [Plaintiff] is in contractual privity with [FirstFire]; and (3) [Plaintiff] is in the class of persons that the securities acts were designed to protect." *Berckeley Inv.*, 455 F.3d at 205. Whether a contract "involved a prohibited transaction" turns on "whether the [alleged] securities violations are inseparable from the underlying agreement between the parties." *Id.* at 206; *see also id.* at 205 ("[T]he violation must be 'inseparable from the performance of the contract' rather than 'collateral or tangential to the contract.'" (quoting *GFL Adv. Fund, Ltd. v. Colkitt*, 272 F.3d 189, 201 (3d Cir. 2001))). As the Third Circuit has explained, "[i]f an agreement cannot be performed without violating the securities laws, that agreement is subject to rescission under Section 29(b)." *Id.* at 206 (quoting *GFL*, 272 F.3d at 202). But "'unlawful transactions made pursuant to lawful contracts' do not fall within the ambit of Section 29(b)." *Id.* at 207 (quoting *GFL*, 272 F.3d at 200).

7. Plaintiff fails to state a claim under § 29(b) at least for the reason that the FAC does not plausibly allege that the making of the Note or the performance of the Note required FirstFire to act as an unregistered securities dealer. As numerous courts have explained—including the district court that originally presided over this case—a defendant's failure to register as a dealer does not make a transaction prohibited within the meaning of § 29(b), where the underlying contract does not require the defendant to act as a dealer. *DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, No. 21-11222, 2023 WL 199196, at *11 (S.D.N.Y. Jan. 17, 2023) (citing cases), *vacated in part on other grounds*, No. 23-78, 2024 WL 1326964 (2d Cir. Mar. 28, 2024); *see also Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 415–16 (2d Cir. 2025) (stock purchase

4

agreement entered into by unregistered securities dealer was not voidable under § 29(a) because agreement (when formed or performed) did not require party to transact securities while operating as an unregistered securities dealer).

8. Count IV is a RICO claim under 18 U.S.C. § 1962(c), which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). This claim is premised on Plaintiff's contention that the Note is unlawful because it violates New York usury law. But Amendment No. 1 to the Note expressly provides that the parties' agreements "shall be governed by and construed in accordance with the laws of the State of Delaware." (D.I. 66, Ex. C.) To determine if the choice of law provision should be enforced, "federal courts sitting in diversity apply the choice-of-law rules of the forum state"—here, Delaware. *Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009). And Delaware uses the test stated in the Restatement (Second) of Conflict of Laws § 187, which states that a choice of law clause will be enforced unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 881 (Del. Ch. 2009) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)) (emphasis removed).

9. Plaintiff does not contend that Delaware has no relationship to the parties; indeed, Plaintiff is a Delaware corporation. Nor does Plaintiff contend that New York law has a materially greater interest than Delaware. Plaintiff's only argument against enforcing the choice of law provision is that, because the Note was void under New York law at the time it was executed, the amendment adding the Delaware choice of law clause was "ineffectual." (D.I. 67 at 17.) Plaintiff cites no authority in support of that argument. And it makes little sense. If the parties have agreed that Delaware law applies to the interpretation of the Note, there is no reason to consider whether the Note would have been void under New York law at the time of its execution. Because the RICO claim is premised entirely on Plaintiff's contention that New York usury law applies to the Note, it will be dismissed.

10. Plaintiff offers no other reasons why the FAC should not be dismissed in its entirety. Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (D.I. 64) is GRANTED. Any request for leave to amend shall be filed on or before October 21, 2025.

Dated: September 30, 2025

_____
The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE